

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**DAVID LEE PATTERSON, JR.,**

       Petitioner,

v.                                             Civil Action No. **3:15CV328**

**HAROLD CLARKE,**

       Respondent.

## MEMORANDUM OPINION

David Lee Patterson, Jr., a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 (hereinafter, "§ 2254 Petition," ECF No. 1) challenging his conviction in the Circuit Court of the City of Portsmouth, Virginia (hereinafter, "Circuit Court"). In his § 2254 Petition, Patterson argues entitlement to relief based upon the following claims: [1]

Claim One:    "The court was without jurisdiction to enter an order *nunc pro tunc* pursuant to Va. Code [§] 8.01-428(b)[2] without first complying with notice provision . . . ." (§ 2254 Pet. Attach. 2, ECF No. 1-1.)

---

[1] The Court corrects the spelling, punctuation, and capitalization in the quotations from Patterson's submissions.

[2] Virginia Code sections 8.01-428(B) and (C) state:

B. Clerical mistakes.--Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party and after such notice, as the court may order. . . .

C. Failure to notify the party or counsel of final order.--If counsel, or a party not represented by counsel, . . . is not notified by any means of the entry of a final order and the circuit court is satisfied that such lack of notice (i) did not result from a failure to exercise due diligence on the part of that party and (ii) denied that party an opportunity to pursue post-trial relief in the circuit court or to file an appeal therefrom, the circuit court may, within 60 days of the date of entry of such order, modify, vacate, or suspend the order or grant the party leave to appeal. . . .

Claim Two: "For reasons [stated in Claim One,] the petitioner was denied his constitutional right to appeal and further, the petitioner only became aware of this issue in January of 2015, once he received his legal update sheet . . . reflecting the 5-year increase in his sentence and only then did the petitioner become aware that the court entered the *nunc pro tunc* order." (*Id.* at 4 (emphasis added) (citation omitted).)

Claim Three: "The trial court considered a charge that had been nolle processed (i.e the possession of Marijuana/WID) in sentencing the petitioner . . . when in fact the petitioner pled guilty to Manufacturing Marijuana. There is a clear sentencing disparity between possession of Marijuana/WID and Manufacturing Marijuana." (*Id.* at 5.)

Claim Four: "The petitioner's guilty plea was unlawfully induced in violation of *Boykin v. Alabama*, 395 U.S. 238 (1969) where such guilty plea was made without petitioner's knowledge and appreciation of its consequences regarding the mandatory minimum in connection with the possession of a firearm while PWID of Marijuana." (*Id.* (emphasis added).)

Claim Five: "The petitioner's right to due process was violated when the court found that the petitioner was guilty of possession of a firearm/WID Marijuana without any finding that the petitioner was in possession of Marijuana/WID as the possession of Marijuana was nolle processed." (*Id.*)

Claim Six: "The Court made a sentencing determination based on Virginia Code 18.2-308.4(C) which mandated that the petitioner be subjected to a 5-year mandatory sentence as reflected in the change of sentencing guidelines where the low-mid-and high were all elevated to reflect 5 years as a mandatory minimum the petitioner could receive." (*Id.* at 6.)

Claim Seven: "The Commonwealth violated *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] by failing to disclose the means of the information received leading to the investigation, namely the concerned citizen that Officer Johnakin claims to have been informed of a marijuana grow at the residence located and listed on the indictment in as much the means of receiving this information, who gave the information, [and] at what time and date the information was received." (*Id.* at 9 (emphasis added).)

Claim Eight: "The *Brady* material that was withheld would have changed the result of the proceeding as the petitioner would have moved to suppress based on an unlawful search [and] seizure in violation of the Fourth Amendment . . . ." (*Id.* (emphasis added).)

Va. Code Ann § 8.01-428(B) and (C) (West 2015).

Claim Nine:     "The Commonwealth violated the petitioner's right to confrontation when 'testimonial' evidence was introduced against the petitioner without an opportunity for cross-examination." (*Id.* at 10.)

Claim Ten:      "The state committed a 'Giglio' violation when it failed to provide the defense material impeachment of the prosecution's informants. *Giglio v. U.S.*, 405 U.S. 150 (1972). Moreover, this violation caused a violation to 'reciprocal discovery,' which in turn denied the defense the right to discovery against the state . . . ." (*Id.* (emphasis added).)

Respondent moves to dismiss on the ground, *inter alia*, that Patterson's claims are procedurally defaulted. Patterson has responded. For the reasons set forth below, the Motion to Dismiss (ECF No. 14) will be GRANTED.

## I.    PROCEDURAL HISTORY

A grand jury charged Patterson with two counts of possession with the intent to distribute marijuana, and one count each of maintaining a fortified drug house, use of a police radio during a crime, and possession of a firearm while possessing with the intent to distribute marijuana. (See ECF No. 16-1, at 1-4.) Patterson pled guilty to one count of possession with intent to distribute marijuana, maintaining a fortified drug house, use of a police radio during a crime, and possession of a firearm while possessing with the intent to distribute marijuana. (*See id.*) The Commonwealth subsequently moved to *nolle prosequi* the remaining possession with intent to distribute marijuana count. (*See id.* at 1.) By Sentencing Order entered May 18, 2011, the Circuit Court sentenced Patterson to the following fifteen-year active sentence: twenty years of incarceration with ten years suspended on the possession with intent to distribute count (ECF No. 16-2, at 6-7); five years of incarceration to run consecutively on the possession of a firearm count (*id.*); two years to run concurrently on the maintaining a fortified drug house (*id.* at 2-3); and twelve months to run concurrently for use of the police radio (*id.*). On the final page of the Sentencing Order, the Circuit Court mistakenly summarized Patterson's total sentence as twenty

3

years of incarceration with ten years suspended, and neglected to include in the summary the five-year consecutive sentence for the firearm offense. (*Id.* at 8.)

On July 13, 2011, the Circuit Court entered a Corrected Sentencing Order *nunc pro tunc* to May 18, 2011. (ECF No. 16-2, at 9-12.) The Circuit Court explained: "This Order [c]orrects the sentencing summary from the Total Incarceration Sentence Imposed from 20 years to 25 years." (*Id.* at 9.)

On October 28, 2011, Patterson filed a motion to reconsider his sentence. (ECF No. 16-6, 1-2.) During the hearing on the motion for reconsideration, defense counsel asked Patterson "how much active time did you get to serve?" (ECF No. 16-3, at 70-71 (as paginated by CM/ECF).) Patterson answered: "[f]ifteen years." (*Id.* at 71.) Patterson also agreed that he was "aware that five years of that sentence is a sentence that cannot be suspended and cannot run concurrent to anything else." (*Id.*) On November 30, 2011, the Circuit Court denied the motion to reconsider. (*Id.* at 103.)

Patterson filed no direct appeal. On March 6, 2015, Patterson filed a petition for writ of habeas corpus in the Supreme Court of Virginia raising nearly identical claims as those raised in the instant § 2254 Petition. (ECF No. 16-4, at 2-10.) On May 13, 2015, the Supreme Court of Virginia dismissed the habeas petition finding it untimely filed pursuant to section 8.01-654(A)(2) of the Virginia Code. (ECF No. 16-4, at 12 (citing Va. Code Ann. § 8.01-654(A)(2).)[3]

On May 20, 2015, Patterson filed his § 2254 Petition in this Court.

---

[3] This statute provides:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01-654(A)(2) (West 2015).

## II.   EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles'" must be presented to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been

5

exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994-95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n. 1).[4] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Supreme Court of Virginia found Patterson's claims time-barred pursuant to section 8.01-654(A)(2) of the Virginia Code. Virginia's statute of limitations for habeas actions is an adequate and independent procedural rule when so applied. *See Sparrow v. Dir. Dep't of Corr.,*

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).

439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006).[5]  Instead of arguing cause and actual prejudice or

a miscarriage of justice to excuse his default, Patterson's argument is tailored to the federal

statute of limitations. *See* 28 U.S.C. § 2244(d)(1)(B).  In the section of his § 2254 Petition

devoted to the timeliness of his federal habeas petition, Patterson offers that his claims should be

deemed timely by this Court because

> the state impeded his right to timely file by action of the [Circuit Court] when it
> entered a the new order *nunc pro tunc* increasing the active sentence by 5 years
> without notice to the petitioner or his trial counsel.  The petitioner only became
> aware of this by receiving a legal update sheet from (VDOC) in January of 2015
> and the petitioner had no reason to believe or suspect that the court had entered a
> new order *nunc pro tunc* well after the 21 days of its original order . . . .

(§ 2254 Pet. 25 (emphasis added).)  Because Patterson's arguments are tailored to excusing the

untimely filing of his § 2254 Petition, his arguments are difficult to square with what he must

prove for this Court to excuse his default.  Nevertheless, the Court generously construes

Patterson to argue that he was unaware of the entry of the *nunc pro tunc* Corrected Sentencing

Order that purportedly increased his sentence until January 2015, and that his lack of knowledge

of this Order serves as cause for his untimely filing of his state habeas petition.  As discussed

below, Patterson's contentions are both belied by the record and are patently false, and fail to

excuse his default.

At the base of his argument, Patterson seeks to benefit from a clerical error that the

Circuit Court made in May 2011 and corrected in July 2011.  The Circuit Court's correction of

this error had no impact on Patterson's sentence.  In its Sentencing Order, the Circuit Court noted

that Patterson had an active term of fifteen years of incarceration.  In the summary at the end of

---

[5] All of the claims Patterson raised in his state habeas petition and the instant § 2254 Petition are
claims that Patterson could have raised, but failed to raise, on direct appeal.  The Supreme Court
of Virginia could have also found Patterson's claims barred by the rule in *Slayton v. Parrigan*,
205 S.E.2d 680 (Va. 1974), because Patterson could have raised, but failed to raise, such claims
on direct appeal.  *Slayton* constitutes an adequate and independent state procedural rule when so
applied.  *See Mu'Min v. Pruett*, 125 F.3d 192, 196-97 (4th Cir. 1997).

the Sentencing Order, the Circuit Court made a clerical error and failed to include the five-year

consecutive sentence for the firearm offense in addition to the ten-year active sentence for

possession with intent to distribute marijuana. Contrary to Patterson's allegation that the Circuit

Court "increased the active sentence by 5 years," (*id.* at 25), the Circuit Court merely corrected

its omission in the Corrected Sentencing Order to reflect the fifteen-year active sentence that it

had previously imposed. Thus, Patterson's sentence was not altered by the Corrected Sentencing

Order as he suggests now.

Next, whether or not Patterson himself physically received a copy of the July 13, 2011

Corrected Sentencing Order, the record conclusively demonstrates that Patterson was aware that

the Circuit Court sentenced him to a fifteen-year active sentence at the time of his sentencing.

His statements to the contrary are palpably incredible. Patterson was present at his sentencing

and heard the Circuit Court pronounce from the bench that he was sentenced to a fifteen-year

active sentence. (ECF No. 16-3, at 64-65 (as paginated by CM/ECF).) Thus, Patterson's

statement, that he only learned that he had a fifteen-year sentence, not a ten-year sentence, in

July 2015, is simply false.[6]

In his Traverse, Patterson states: "[t]he petitioner never claimed to not be aware of the

sentence pronounced from the bench on May 16, 2011. What he was not aware of is the Circuit

Court entering the order *nunc pro tunc* on July 13, 2011." (Traverse 14-15, ECF No. 21

(emphasis added).) First, Patterson's contention that he only learned that the Circuit Court had

entered the *nunc pro tunc* Corrected Sentencing Order through a VDOC update sheet he received

in January 2015 is palpably incredible. Patterson argues that neither he nor counsel had notice of

the Corrected Sentencing Order entered on July 13, 2011. (§ 2254 Pet. Attach. 2.) However,

---

[6] This Court may dismiss allegations where the record conclusively establishes that they are
either "palpably incredible" or "patently frivolous or false." *United States v. Lemaster*, 403 F.3d
216, 221 (4th Cir. 2005) (internal quotation marks omitted) (citations omitted).

counsel clearly was aware of Patterson's corrected sentence because he filed a motion to reconsider Patterson's sentence after the Circuit Court entered the Corrected Sentencing Order. In the Motion to Reconsider, counsel summarized the sentence as it was stated in the corrected sentencing order. (ECF No. 16-6, at 1.) On November 29, 2011, the Circuit Court held a hearing on the motion. Patterson was present and testified that he was aware that he had fifteen-year sentence, which was comprised in part of the five-year firearm sentence. (ECF No. 16-3, at 70-71 (as paginated by CM/ECF).) Patterson's claim that he was not aware of his sentence until January 2015 is belied by the record. Thus, Patterson's purported lack of knowledge of his sentence fails to excuse the default of his claims.

Additionally, Patterson's purported late notice of the Corrected Sentencing Order also fails to serve as cause for the default of his claims. In order to excuse a default, Patterson must demonstrate cause *and* "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. As discussed previously, the Corrected Sentencing Order corrected an omission in the sentence summary and did not alter or increase Patterson's sentence. Therefore, even if Patterson was unaware that the Circuit Court entered the Corrected Sentencing Order in July 2011, he demonstrates no *actual* prejudice from his failure to receive the Corrected Sentencing Order.

Moreover, Patterson essentially argues that his lack of knowledge of the Circuit Court's Corrected Sentencing Order caused him to default his challenges to that order.[7] Patterson states that his receipt of the VDOC legal update sheet prompted him to investigate "what the Circuit

---

[7] The Court fails to discern how Patterson's purported lack of knowledge of his sentence or of the Corrected Sentencing Order would have prevented him from timely pursuing the majority of his claims. With the exception of Claims One, Two, and Six, which pertain directly to the Circuit Court's Corrected Sentencing Order, Patterson's claims all stem from purported errors that occurred prior to the entry of his guilty plea and at sentencing and have nothing to do with a lack of knowledge of his sentence or the Corrected Sentencing Order.

Court originally sentenced him to" and "why none of the proper procedures were followed." (Traverse 15.) Patterson's claims pertaining to the Circuit Court's errors allege violation of state law, not constitutional law. Patterson's state law challenges provide no basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law").

Because Patterson demonstrates no cause and prejudice to excuse his default, his claims are barred from review here.[8]

## III. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 14) will be GRANTED. Patterson's claims will be DISMISSED, and his § 2254 Petition will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[9]

An appropriate Final Order shall issue.

/s/
Roderick C. Young
United States Magistrate Judge

Date: March 14, 2016
Richmond, Virginia

---

[8] Moreover, to the extent Patterson argues that his failure to receive this Corrected Sentencing Order somehow deprived him of his right to appeal, and therefore, resulted in a miscarriage of justice, this claim lacks the ring of truth. Patterson filed no appeal of his original Sentencing Order entered in May of 2011, and never attempted to file a direct appeal at any time, even after the Court's denial of his motion for reconsideration in November of 2011. As just discussed, the majority of Patterson's claims were available to him prior to the entry of the Corrected Sentencing Order.

[9] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Patterson fails to meet this standard.